Welcome everyone. Before we start, let me tell you that Justice Navarro had a scheduling issue. He's joining us by Zoom. I believe he's there already and he will ask questions. I have not done this hybrid Zoom in person before, so please be patient. I will be patient with you, be patient with me. And Justice Navarro, be assertive if you want to ask a question, because we can just barely see you, so you know. All right, would the clerk please call the case? Before we start, I'm going to ask first the appellant and then the appellee to tell us your name for the record. Each side has 20 minutes. In addition to that, the appellant will have five minutes. Whether you reserve time or not, you will have five minutes. You're the appellant for rebuttal. We will be loose on time, particularly given our hybrid situation. My name is Kara Kurland for the appellant, Mr. Lewis Hampton. Can you spell your last name for the record? K-U-R-L-A-N-D. Okay, let me tell everybody that that microphone does not amplify. It's simply for recording, so you need to keep your voice up as you can see, we have a whole room. And we have air conditioning, you might be able to hear. Good afternoon, your honors. My name is Lynette Cusack, C-U-S-A-C-K, for the people of the state of Illinois. All right. Ms. Kurland, whenever you are ready, you may begin. Good morning. May it please the court. Every single possession crime in Illinois explicitly includes the element of knowledge in its IPI except for armed habitual criminal. But like all other possession crimes, armed habitual criminal requires proof of knowledge to convict because knowledge is an essential element of the charge. In this case, the jury had to find that Mr. Hampton knowingly possessed the firearm found under the seat of his car in order to find him guilty. Despite trial counsel's best efforts to include this essential element in the jury instruction, the court denied this request. And at that time, there was no IPI instruction. Yes, correct. But since then, it's been promulgated, but it still does not have a knowledge required. Yes, the IPI that currently exists is identical to the instruction that was ours. I'm sorry. Did you have a question? I did. Ms. Kurland, if you can hear me. So, if a judge were to give the current IPI that is now in effect without that knowledge element that you're arguing for, you're saying the IPI that was promulgated would be incorrect? Yes, Your Honor. Should I look? You can look wherever you like. The microphone will pick you up for whoever you're looking at, so look where you like. Yes, Justice Navarro, even if the instruction was given today as an IPI, it would still be incorrect. And the reason for that is because IPIs are not the law. There hasn't been any approved or rejected after it's been judicially questioned and considered. So, the Armed Habitual Criminal IPI was approved by the Criminal Committee in February of 2023. So, until now, it has not been judicially challenged, which means that this Court has the first opportunity to weigh in on the validity of the Armed Habitual Criminal IPI and to declare it an accurate statement of the law. But Ms. Kurland, the IPIs are presumed to be correct? Yes, there is that presumption, but until they've been judicially challenged, that isn't a firmly established law. And as I said previously, that currently the Armed Habitual Criminal IPI hasn't had any legal challenge to it that I know of. Okay, thank you. So, just to back up and explain, Mr. Hampton had a right for the jury to be properly instructed, and that's because it is critical that the jury instructions accurately convey the essential elements of a charge. Knowledge is an essential element of the Armed Habitual Criminal charge. Do you think that it was cured in any sense by the possession instruction that was given? Yes, I'd be happy to address that. So, I do not believe that the instruction 4.16 on possession was sufficient to cure the error. And I want to clarify that IPI 4.16 on possession, it does not just instruct on constructive possession. It instructs that possession can be actual or constructive, and then it goes on to define actual possession and constructive possession. So, in this case, the jury could have found theoretically that he had actual possession without necessarily that he had knowledge and could have convicted on that basis. Exactly. And just to kind of explain that logic, actual possession is defined as having exclusive and immediate control over a thing. And so, based on that definition, there is no mens rea in the definition of actual possession. So, Justice McPhitt, just like you said, if the jury chose to follow the actual possession definition instead of the constructive possession definition, then they could have found that Mr. Hampton actually possessed the firearm found under his seat without finding that they knew that the firearm was in the car. So, for that reason, IPI 4.16 was not sufficient to cure this error. And to jump back for just a minute to Justice Navarro's line of questioning, did you cite any cases in which this court or the Supreme Court has reversed a conviction on the basis of a jury instruction that wasn't IPI-approved jury instruction? The state actually cites a case, not necessarily for that proposition, Hanna v. Illinois Medical. And in that case, the Illinois Supreme Court found that IPI Civil 710.02 and IPI Civil 710.03 were unfair and inaccurate statements of the law. So, this is a practice that the court does engage in. So, the trial court... Yes, Justice Navarro. The... We're focused on knowledge. In the statute under 4.3b, where there is no mental state delineated, the mental state could be anything. It could be intent, it could be knowledge, it could be recklessness. So, we're focused on knowledge. Why are we focused just on knowledge? And why not on intent when the constructive possession instruction does talk about intent? Yes, Justice Navarro. So, it is true that the Armed Provisional Criminal Statute is silent on mental state, but the Possession as a Voluntary Act Statute states that possession is a voluntary act if the offender knowingly procured or received a thing possessed. So, the only possible mental state in the Armed Provisional Criminal Charge and in any possession charge is knowledge, which is why it's an essential element of the Armed Provisional Criminal Charge. Now, Counselor Day, Justice Navarro, Justice Mikla, we have quite a few high school and college, a couple of college students in here too, but I know we have small students. So, could you take like three minutes and go over the facts so they will have some idea as to how this interplays? Yes. No, it's not your job. We're not trying to teach you. Let's just stay here. We don't want them to walk out clueless. I'd be happy to, Justice Vial. Mr. Hampton was convicted of armed habitual criminal, which required the state to find that he had two qualifying felony convictions and that he knowingly possessed the firearm that was found. He was driving in his car when he was pulled over because he had a tail light that was out. When the police pulled him over and talked to him, one of the officers that testified, Officer Carrion, testified that he saw my client lean over. There was body worn camera footage, but that footage did not show him leaning over. It just showed the interaction that Officer Carrion had with Mr. Hampton. So, they pulled him over. They talked for about nine minutes. Ultimately, Mr. Hampton got out of the car, was arrested. The officer found a gun under the seat of his car. At trial, Mr. Hampton's car. Oh, good correction. It was his girlfriend's car, Darshay Scott. At trial, Darshay Scott testified that it was her car that her and Mr. Hampton were at her sister-in-law's home for a party and that it was her gun that was at the sister-in-law's home. She kept it there because she had foster kids, but when she was at the sister-in-law's home, there were kids. So, she removed the gun from the home and put it under the seat of the car without telling Mr. Hampton. Mr. Hampton then needed to quickly drop his friend off nearby. So, he drove the car, which is when he was pulled over about a mile away from the home. And so, based on that evidence, the jury found him guilty of armed habitual criminal. And just to specify for the audience, again, armed habitual criminal requires knowing possession, but the jury instruction only instructed that they had to find that he possessed a firearm. And to just add, and thank you, Justice Lyle, for doing that, he made a specific request for an instruction that included that he had to know that he had the guns because that was the issue at trial. Yes. And at the time, there was no IPI, no committee put out an instruction on this charge. So, defense counsel objected because the requested instruction didn't include the word knowingly. And defense counsel said, this is improper. There's no knowingly, so it doesn't have a mens rea. This is not a correct instruction. And the judge found that because it matched the language of the statute, it was correct. So, I believe it's immaterial that the profit instruction matched the language of the statute. For one, jury instructions are required to accurately state the law, not the statute. Second, IPI committee notes on multiple crimes, including multiple weapons offenses, explain that because the statute does not include a mental state, the committee decided to include one in the jury instruction, because it is still the state's burden to prove this element. And relatedly, Ms. Kerland, sorry, Ms. Kerland, the committee had an opportunity to look at this, and the committee did not include a mental state when they finally created an IPI for an individual. What do you say to the committee? I don't know how the committee came to this decision. Committee notes are often helpful to understand how they came to their decision. And there is no note in IPI 18.07B that explains an absence of mens rea. And I think that is telling, because in multiple IPIs where the statute is silent on mens rea, the committee specifically says, it's not in the statute, but we're going to include it here because it is the state's burden. That entire conversation was absent from the armed habitual criminal IPI, and we just don't know why. So lastly, I do want to explain that this error, again, was not harmless beyond a reasonable doubt. In addition to IPI 4. You would have the burden on that, wouldn't you, because it was not an objection to error, correct? So it has to be plain error. And don't you think you have the burden of showing that it was harmful as opposed to them having the burden of showing that it was harmless? I don't believe that's correct because of the objection at trial where defense counsel said this lacked a mens rea, this was not improper instruction, though he did not include this issue in a post-trial motion. This is clearly a constitutional issue. Mr. Hampton had a jury properly instructed on every element of the offense. There was no mens rea in this instruction. Is there a case law that says having a jury properly instructed is a constitutional issue? It is a due process right to have the jury properly instructed. Do you have a case that says that? I could find many cases in supplemental briefing for you if you would like. We'll let you know if we need that. Yes. So my argument is that it would be the state's burden to prove that error was harmless beyond a reasonable doubt. And I don't think they can meet that burden. In addition to the reasoning regarding IPI 4.16, like I discussed, I also think it's important to hone in on the facts of this case and that it was a very close case. One witness testified for the state, Officer Kerrion, indicating that Mr. Hampton knew there was a gun in a car. And one witness testified for the defense, Darshay Scott, that Mr. Hampton didn't know the gun was in the car. The jury took two days to deliberate, and throughout that deliberation sent two juror notes, one of which indicated that they were seriously considering Darshay Scott's testimony, and the other saying that they were deadlocked and that they could not come to a decision because this case was so close. So given the facts of this Now, isn't it a fact that the defendant never admitted that this was his gun and there was no forensic evidence indicating that he ever possessed it? Correct. There was no fingerprint evidence that, you know, could have placed his DNA on the gun. Darshay Scott testified it was her gun. She had a FOID card. Party stipulated she had a FOID card. It was in good standing. And they also stipulated that she had title to the chief. It was her car that he was driving. So these facts indicate that it was a close case. And again, the jury clearly was grappling with these facts for two days before they came to their decision. So for these reasons, I ask that this court reverse Mr. Hampton's conviction and remand for a new trial. Thank you. Good morning. May it please the court. Defendant's conviction should be affirmed because the jury was properly instructed on the offense of armed habitual criminal and trial counsel provided effective assistance. There was no error in the armed habitual criminal instruction that was given to the jury. At the time of defendant's trial, there was no pattern jury instruction for armed habitual criminal. The armed habitual criminal instruction that was given said a person commits the offense of armed habitual criminal when he possesses any firearm after previously being felony offenses. That instruction tracked the language of the statute. That's not determinative, though. Right, counsel. The fact that it tracked the statute, the fact that there is no specific mental state required by the statute does not mean that there isn't a mental state required determined. No, your honor. But the law case law has held that language that tracks the statute has been held to be sufficient in some cases. But it's your position, or at least one of your positions, that there is absolutely no knowledge requirement for possession of a gun in an armed habitual criminal conviction. Is that your position? No, your honor. Our position is that the jury was properly instructed when the constructive possession instruction was also given. Well, that's different. You're saying that there are two arguments, and you seem to make both of them agree. One is there actually is no knowledge requirement because it's a general intent crime. I'm honestly not sure I understand that argument. I do understand your second argument, which is that the knowledge requirement is provided by virtue of the possession instruction. But those are two separate arguments. So I want to hone in first on your first argument that there's simply no knowledge requirement, and I'm just not sure I understand that argument. Okay. Case law has held that when there is a general intent crime, the... I'm sorry. If I can have one moment. Sure. Where a statute fails to specify a mental state, a mental state of intent, knowledge, or recklessness is applicable. Yes, I think that's right. But then they still have to be instructed that you have to find one of those. And there was no instruction here unless you rely on possession, which we'll get to later. There is no instruction that they have to find one of those. Well, case law has also held that you have to look at the whole track, the record as a whole. So the jury was apprised of the fact that the defendant knowingly possessed the gun, or that they should look at the fact that he knowingly or intentionally possessed the gun. Counsel, is that because you're saying look at the indictment and the indictment said knowingly or intentionally possessed the firearms? Well, the judge did read the indictment to the jury before the trial started, which said that he must know or that the defendant knowingly and intentionally possessed the firearm. In opening arguments of both the people and defendant, it was argued that he knowingly possessed the gun. And in closing arguments of both sides, it was argued that he knowingly possessed the gun. But counsel, before arguments, before opening statements, the judge instructs the jury, what the lawyers say is not the law. What the lawyers, what I'm going to instruct you as to the law in the form of the instructions, what the lawyers say is not law. Correct. Yes. And isn't it, I think also true in this case, that when the jury came back and said we're deadlocked, they were directed back to the jury instructions? Yes, they were. And they, speaking to the jury or the questions from the jury, one of their questions was, who was the gun registered to? And that shows that the jury was considering whether or not the defendant had knowledge of the gun. They were considering was the gun registered to the defendant or was it registered to Miss Scott, his girlfriend, who was the owner of the vehicle that the gun was found in? So that question shows that they were considering whether or not the defendant had knowledge of the gun, because if he, if the gun was registered to him, obviously he would have knowledge of it. We don't know what goes on in the jury room. That's how we all get this case. But it's certainly possible that somebody on the jury said, hey, we don't have to find that he had knowledge. Let's look at the instructions. They don't say that he has to have knowledge, correct? I mean, that could have happened. That's the defendant's position, that if somebody said that and they went back and looked at the instructions, the instructions don't say, oh yeah, you have to find that he knew the gun was there. That is possible, yes. And the fact that they sent a note out to the Judge Sam Do you believe that that indicates that this was a close call? That they were not able to come to a decision? Well, they did come to a decision. When they were sent back in at this point, and it may take you a week, it may take you a year, but keep going. And look at the instructions. They obviously were considering whether or not the question of who the gun was registered to indicates that they were considering whether or not the defendant had knowledge of the gun's presence under the seat. What evidence, other than the strikeout, what evidence did the record include that indicated that he had knowledge? It was simply the officer's testimony? Yes, the officer testified that when he was pulling the defendant over, he saw the defendant reach toward the area where the gun was recovered. When the officer finally was able to, or when defendant finally exited the car after being asked numerous times to exit the car, the officer saw without having to search the gun. Are there any other offenses that involve possession of a weapon that do not include a mens rea? Not to my knowledge. May I continue? Please. Thank you. The armed habitual criminal instruction, which was added in 2023 after this trial, still does not mention a mental state. Pattern instructions are presumed to be accurate statements of Illinois law. Where a statute fails to specify a mental state, a mental state of intent, knowledge, or recklessness is applicable. And this mental state was addressed in the constructive possession instruction, where the jury was not allowed to use a gun. That's only for constructive possession and not for actual possession. Correct. So just so I understand your position, is it your position that if somebody, Justice Lyle, sticks a gun in my purse and I don't have a FOID card, I have no idea it's there, I can be guilty, assuming I have two felony convictions, of being an armed habitual criminal? Is that your position? Not if you didn't have the intent or knowledge. Exactly. I have exclusive control, so I have actual possession. So wouldn't it be something, wouldn't you need to have some other indicia of her awareness, at least, that the gun was there? As a matter of evidence, would you need to be able to prove that or show that? Yes, and the defendant or the defendant's movement. Yes. That was what gave the requisite knowledge. Yes. Reaching toward the area where the gun was found, the fact that the gun was visible without the officer having to search for it. The defendant would not get out of the car for five minutes. The officer went over and had to reach under the seat. I thought the evidence said that, but it may be a contested fact. I'm not sure. He, yes, he did have to reach under the seat to retrieve the gun, but he said that he saw the butt or something. Yes. He was able to see it without searching for it. I mean, I don't think anyone, even the defendant disputes that there was evidence on both sides. There's evidence that suggests he has knowledge, and then the defendant told a different version under which he had no knowledge. His girlfriend put it there. He had no knowledge of it. He's driving his friend to the home. He has no knowledge. There's evidence both ways. Correct. The question is, does the jury have to be instructed that he has to know that the gun is there? Yes, and they were instructed with the constructive possession, along with the armed habitual criminal. If I can go back to the testimony of Ms. Scott, she testified that she owned the gun, yet she could not say what make and model it was. She didn't have a holster for the gun. She had taken the gun to her sister-in-law's house two years prior to this date because there were children in her house, and on this very date, after not speaking to her sister-in-law for two years, she attends a party there, and that is the time that she decides to retrieve the gun, put it under the front seat of her car, and without apprising the defendant that there was a gun in the car, let him borrow her car. That shows that, I mean, that is not the way. And so, Ms. Cusack, your position would be that the jury heard this testimony, weighed the testimony of the defendant's girlfriend or fiance, and weighed the testimony of the officer, and ultimately concluded that the defendant was in possession of the firearm, constructive or actual? Yes, that is. I'm sorry. Do you agree that you cite a case in your brief that says that even though there's an IPI instruction, that a conviction in which that IPI instruction is given can be reversed for incorrect instruction? That was a terribly worded question, but I think you understand. I do understand. I am not sure what case counsel was talking about. It was a civil case. Yes. And I did go through my brief. When she mentioned it, I can look it up. I mean, certainly, she's right, isn't she, that an IPI instruction is not unassailable, that it is a statement from the Illinois Supreme Court that says this is the law. It's not that. It is our job as the court, if it incorrectly states the law, to reverse a conviction that's based on that instruction, correct? That is correct, but here the jury was properly instructed. They were instructed. I'm sorry. But before we get to that, there's a presumption that it is an accurate statement of the law. It may not be, but there is a presumption that it is an accurate statement of the law, the IPI. There is that presumption, yes, Your Honor. And the fact that this armed to patrol criminal instruction was only put into effect in 2023 and still does not have the requisite intent, I can't presume to guess why the committee did not put in the requisite intent. Perhaps they didn't want the superfluous language. Perhaps they know that either constructive or actual possession instructions are usually given when there is a possession case. Every other gun charge has that element. Every other gun charge in 18 of the IPI instructions has that intent or knowledge instruction as part of it. Why this one exception? Do you have any idea? I do not. A trial judge has the ability to use a non-IPI instruction, correct? Yes. Meaning if there's an instruction that does not meet the evidence, they have ability to formulate an instruction with the assistance of the prosecutor and defense attorney, correct? Correct. But here, after a couple- My point being that you're not limited to an instruction if it does not meet the facts of your particular case, or in fact, if you believe that something is missing in that instruction. That is correct, but the IPIs are also to be presumed to be correct. And the fact that the IPI, which was promulgated just a year after defendant's case, reads exactly as what was read to the jury, I think- I guess that leads to another question. Our standard of review here is de novo, correct, in terms of whether the instruction accurately stated the law. Correct. Yes. And do you agree with the defendant that you have the burden, if we think it was error, do you agree that you have the burden of showing that error was harmless? No, your honor, I don't. Because the defendant, it is our position that the defendant forfeited this argument because while they did object at trial, that objection did not apprise the trial court that it was a due process issue or that it was a constitutional issue. And then, furthermore, it was not in his post-trial motion. This was not brought up in his post-trial motion. So then the way for the court to look at it would be through plain error, which would be the defendant's burden to show that there was error. The state is arguing that there is no error, period. So there can be no plain error. Yeah, continue. Sure. Okay. Intent is a higher mental state than knowledge. If a person is acting with intent, they are acting with knowledge. Looking at the instructions for armed habitual criminal and constructive possession, which were given to the jury along with the trial record, the indictment, which was read to the jury, which said that the defendant knowingly and intentionally possessed the firearm and the opening and closing arguments, there was not a reasonable likelihood that the jury applied an instruction that relieved the people of its burden. The, I'm sorry, trial counsel provided effective assistance to the defendant because the instructions given comported with Illinois law, counsel's objection was meritless and the failure to include the issue in the post-trial motion did not prejudice him. Even if counsel didn't properly object or raise the issue in his post-trial motion, this wasn't clear or obvious error because there was no prejudice because the law is clear on the instructions and one must look at the entirety of counsel's performance. Does the court have any other questions? Justice Navarro, any other questions? No, thank you very much. For these reasons and those stated in our brief, the people ask this honorable court to affirm defendant's conviction. Thank you. I just have one question before you start. Does it matter? Who's it for? This is for her. That, would your argument be the same if their specific instruction had not been requested? I guess what I'm saying is that your view that the court needs to give this instruction requiring knowledge even if there's no specific request for it. Yes, absolutely. It's an essential element the jury needed to be instructed on it. So I just have a few brief points I wanted to make in rebuttal. Justice McFaul, I liked your hypo. I want to go back to that hypo. I know Justice Lyle, right? For the court and the audience in this hypo, Justice Lyle has put a gun in Justice McFaul's purse. And I think that this hypo is a really good indication of the problem that could have occurred with the jury. So if there was this gun in your purse and you didn't know about it and you had an instruction about possession, and I just want to clarify the state kept calling it a constructive possession instruction. It is a possession instruction that defined actual and constructive possession. And the actual possession definition means if you have immediate and exclusive control over a thing then you possess it. Justice McFaul, it is your purse. It is right next to you. There is a gun in your purse. To a jury, you have immediate and exclusive control over that gun. You would have found to have knowledge. So I find, I think that that just is a clear indication of the issue that could have occurred with the jury. And just to amplify that, in closing arguments, the state, it's not like they just discussed constructive possession or knowledge. They also discussed actual possession and they gave an example of actual possession. And the state's example of actual possession was take this COVID mask that's in the pocket of my jacket. It's a really similar hypothetical. I could lend you my jacket. That COVID mask is in your pocket. You don't know about it, but you have immediate and exclusive control over it. You have possession of it according to the actual possession instruction. And so throughout closing arguments, the state discusses actual possession, gives hypos, and then also refers to simple possession without labeling it actual or constructive, in addition to discussing constructive possession. So constructive possession was by no means the only type of possession that was discussed in closing arguments. And that's your reason that the possession instruction, at least in this case, does not cure what you believe is a problem with the possession, with the armed habitual criminal instruction. Yes. And the last point I wanted to make is just that jurors are ordinary people. They're not legal scholars. This case exemplifies the need for clarity in the armed habitual criminal jury instruction so that jurors can properly and frequently prosecute a crime. The simplest way to achieve this clarity and fairness in an armed habitual case is to explicitly instruct the jury that they had to find knowledge in order to convict. The court has the opportunity to make this change by finding that Mr. Hampton was denied a right to a fair trial and by reversing his conviction. Thank you. Any other questions, Justice Navarro? No, thank you. Thank you. Thank you both. Thank you, everyone. We will take this matter under advisement. Great work, everybody, in dealing with our unusual technology situation. Justice Navarro, thank you. We'll be in touch. Thank you.